UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TELEBRANDS CORP.,<br><br>      Plaintiff,<br><br>    v.<br><br>GUANGZHOULINGYEDIANZISHANG WUYOUXIANGONGSI d/b/a ZEZZ; GUANGZHOUSHISHUGELI NKEJIYOUXIANGONGSI d/b/a DAYISTOOLS; GUANGZHOULINGYEDI ANZISHANGWUYOUXIANGONGSI d/b/a SICILY MIUBBER a/k/a SICILY TDNFAZBR a/k/a SICILY-US; JINGMENSHIZUIMEISH ANGMAOYOUXIANGONGSI d/b/a TYRELLSO a/k/a TYRELLSO GARDEN HOSE; and SHEN ZHEN LING KU KE JI YOU XIAN GONG SI d/b/a LINKU a/k/a LINKU USA,<br><br>      Defendant(s). | 25 Civ. 8558 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

This action concerns alleged infringement of a patented line of expandable garden hoses. Plaintiff Telebrands Corp. ("Plaintiff" or "Telebrands") sought *ex parte* relief against various online sellers, primarily operating out of China. The Court granted initial relief through a Temporary Restraining Order ("TRO") on October 16, 2025 and ordered Defendants to show cause as to why a preliminary injunction should not issue. ECF No. 21. At a hearing on November 13, 2025, only one Defendant appeared: Guangzhoulingyedianzishangwuyouxiangongsi d/b/a Sicily Miubber a/k/a Sicily tdnfazbr a/k/a sicily-us ("Sicily"). The TRO converted to an injunction for the non-appearing Defendants by separate order. *See* ECF No. 39. As stated on the record at the November 13 hearing, the Court **GRANTS IN PART** and **DENIES IN PART** Telebrands' Motion for a Preliminary Injunction against Sicily.

**BACKGROUND**

On October 16, 2025, Plaintiff filed a sealed *ex parte* application for a TRO to enjoin Defendants from selling products that infringe its patent for a garden hose product. ECF No. 7 at 10-12, 18-20. Plaintiff attached declarations from Bala Iyer, Executive Vice President and Chief Operating Officer of Telebrands, and Michael Turrito, Paralegal at Epstein Drangel LLP. ECF Nos. 18-19, 30-31. The Court entered a TRO the same day enjoining all Defendants from selling or manufacturing the infringing products. ECF No. 21. The TRO also restrained Amazon and Defendants' financial institutions from facilitating transactions for these sellers. *Id.* On October 23, 2025, Plaintiff requested that the TRO be extended because of delays in obtaining functional email addresses through which Plaintiff intended to enact service. ECF No. 22. Finding good cause shown, the Court extended the TRO to November 13, 2025 and ordered Defendants to show cause as to why a preliminary injunction should not issue at a hearing on that date. ECF No. 23.

On November 6, 2025, Defendant Sicily appeared and requested an opportunity to respond to Plaintiff's Motion by email. *See* ECF No. 5. Sicily filed their Opposition Brief ("Opp.") on November 10, 2025. ECF No. 28. They attached declarations from Xiaofei Xue, an attorney for IPRTOP LLC, a law firm based in China, and Xiaode Lin, President of Sicily. ECF No. 28-1, 28-2. Sicily made several arguments seeking vacatur of the TRO and in opposition to the issuance of a preliminary injunction, including, *inter alia*, disputing infringement and the validity of the pocket hose patent. *See* Opp. Sicily also argued that electronic service violated the Hague Convention and that the Court was without authority to restrain Sicily's assets under Rule 65.[1] *Id.*

The Court accepted the several declarations and heard argument on November 13, 2025. At the conclusion of the hearing, the Court concluded that a preliminary injunction would issue

---

[1] All references to Rules are to the Federal Rules of Civil Procedure.

with respect to all non-appearing defendants under the terms of the prior TRO. Tr. 37:15-25. The Court also found that Telebrands was entitled to injunctive relief against Sicily, but it declined to continue the restraint on Sicily's assets that was part of the TRO. *Id.* 43:23-447. The Court indicated that a written opinion would follow that oral ruling.

**FINDINGS OF FACT**

"On a motion for preliminary injunction, if essential facts are in dispute, there must be a hearing and appropriate findings of fact must be made." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Stucco Sys's., LLC*, 289 F. Supp. 3d 457, 463 (S.D.N.Y. 2018)[2]. "After the evidentiary hearing is conducted, pursuant to Federal Rules of Civil Procedure 52(a) and 65(d), the Court is required to set forth the findings of fact and conclusions of law which support its order." *Telebrands Corp. v. Guangzhou Alpaca Home Furnishing Co.* ("*Telebrands I*"), No. 25 Civ. 3646, 2025 WL 1591970, at \*2 (S.D.N.Y. June 5, 2025) (citing *Republic of Philippines v. N.Y. Land Co.*, 852 F.2d 33, 37 (2d Cir. 1988)). Based on the Complaint, the Application, the Opposition, and all declarations and exhibits attached thereto, the Court makes the following findings of fact.[3]

Telebrands is a company that develops, produces, markets, and distributes various consumer products. Decl. of Bala Iyer in Supp. of Application ("Iyer Decl.") ¶ 3, ECF No. 19. It

---

[2] In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

[3] Because almost all of the factual background in this matter is identical to a case addressed by a court in this District earlier this year, and the Court finds that the same facts are present in this matter, much of the text of this opinion is adapted from that opinion. *See Telebrands I*, 2025 WL 1591970, at \*2-4; *see also* Tr. 41:1-6 ("[A]s far as the court can tell, for purposes of this motion, the hose in this case and in that one, based on the submissions of the plaintiffs here, have identical components, functionality, and even package, which suggests that all of the expandable hoses at issue in both cases infringe for the same reasons."). This includes nearly identical declarations, offering the same testimony but with respect to a different infringing seller. The case also concerned the same patent, incorporated by reference. Drangel Decl. Ex. B, '941 Patent, at col. 11, line 62 – col. 12, line 4, ECF No. 31.

is the original creator of several "As Seen on TV" products that Telebrands then promotes and sells throughout the United States and globally. *Id.* One of the most popular products in Plaintiff's offering is its line of Pocket Hose Products, which are sold under the trademark POCKET HOSE® and other related marks. *Id.* ¶ 4. These Pocket Hose Products span a line of "innovative, patented, tear-resistant, kink-free" garden hoses that are pocket-sized in length. *Id.* ¶ 5. When water flows through them, the hoses expand in size and then contract when the flow of water ceases. *Id.* Plaintiff makes and sells varieties and different lengths of the Pocket Hose Products, including the Copper Bullet, Silver Bullet, and Marine Pocket Hose Products. *Id.* The Pocket Hose Products typically retail for between $29.99-$109.99. *Id.* ¶ 8.

Telebrands promotes and sells the Pocket Hose Products via television commercials on national cable channels, social media, and retail and wholesale outlets, such as Walmart and Home Depot. *Id.* ¶ 7. Some of these outlets also have locations in New York. Plaintiff also promotes and sells the Pocket Hose Products on its own website, its online storefront on Amazon, and its retail customers' websites. *Id.*

The United States Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Plaintiff is the owner of all intellectual property rights in connection with the Pocket Hose Products. Iyer Decl. ¶ 9. It owns U.S. Patent No. 9,581,272 for "Expandable and Contractible Garden Hose" (the "Pocket Hose Patent" or "Patent"). *Id.* ¶ 10; *see also id.* Ex. A, ECF No. 19-1. According to the "Summary of the Invention," the Patent claims "a hose that expands longitudinally and automatically expands laterally upon the application of water pressure as controlled by a flow restrictor positioned along an outlet of the hose." *Id.* Ex. A at 12.

At particular issue in this litigation is Claim 13 of the Pocket Hose Patent. *Id.*at 16-17.  In the Patent, Claim 13 describes the invention as follows:

> A hose for water comprising: a flexible elongated outer tube having a first end and a second end, an interior of said outer tube being substantially hollow; a flexible elastic elongated inner tube having a first end and a second end, an interior of said inner tube being substantially hollow, said inner tube member is made from an elastic material having an elongation ratio between two and six times its contracted or unexpanded length; a female coupler secured to said first end of said inner and said outer tubes; a male coupler secured to said second end of said inner and said outer tubes; said inner and outer tubes being attached at the couplers; said female coupler coupling said hose to a source of pressurized water, said male coupler coupling said hose to a water flow restrictor; whereby, when water under pressure is introduced into the female coupler, said elongated inner tube expands longitudinally along a length of said inner tube and laterally across a width of said inner tube thereby increasing a length of said hose to an expanded condition; wherein the water flow restrictor is configured to vary the amount of restriction of the water under pressure that is released from the hose while maintaining the length of the hose in the expanded condition; and wherein removal of water under pressure allows the outer tube to contract from the expanded length whereby an inner surface of the outer tube catches on an outside surface of the elastic inner tube helping the outer tube to contract the inner tube.

*Id.*

Telebrands has marked its patented Pocket Hose Products since November 13, 2022.  Iyer Decl. ¶ 16.  Telebrands also has "gone to great lengths" to enforce its patent, *id.* ¶ 19, including investigating the market for infringement itself and hiring outside counsel as investigators, such as Epstein Drangel.  *Id.* ¶¶ 19, 21.  Telebrands first learned of Defendants and the accused products through its own investigation; it then brought in Epstein Drangel to conduct a thorough investigation of the scope of Defendants' infringement.  *Id.* ¶¶ 20-21.  Plaintiff and Epstein Drangel attorneys visually inspected Defendants' Amazon listings to confirm that Defendants indeed offer for sale and, without authorization, sell products that appear to infringe the Patent (the "accused products"), including to customers located in New York.  *Id.* ¶ 22; Decl. of Michael Turrito in Supp. of App. ("Turrito Decl.") ¶¶ 13-17, ECF No. 20.  These products are identified by the Amazon Standard Identification Numbers (ASIN).  *See* Turrito Decl. Ex. B, ECF No. 20-2.  The

5

accused products are offered for sale at a lower price than what Plaintiff offers on its Amazon storefront. Turrito Decl. ¶ 13. Defendants have never been authorized by Telebrands or any of its authorized sellers to offer for sale and/or sell products that are covered by the claims of the Pocket Hose Patent. Iyer Decl. ¶ 23.

Turrito purchased the accused products via each of Defendants' Amazon storefronts. *Id.* ¶ 24; *id.* Ex. B. Relevant here, Sicily delivered an expandable garden hose to Epstein Drangel's address on July 18, 2025. *Id.* Ex. B at 10. Epstein Drangel attorneys opened the boxes of the purchased accused products and took out the items to physically inspect them. Turrito Decl. ¶¶ 18-21. After receiving and visually inspecting the test purchases, Epstein Drangel confirmed that the packaging and internal contents of each of the accused products were similar and that each accused product also contained the same packaging insert. *Id.*; *see also id.* Ex. B at 10-16.

The evidence attached to the Declaration of Michael Turitto established that the accused product purchased from Sicily matched each element of Claim 13 of the Patent, including that "the removal of water under pressure allows the outer tube to contract from the expanded length," whereby "[c]ontraction of the inner tube is aided by contact with the outer tube as the water pressure decreases." *Id.* Ex. B at 10-16. The claim chart clearly walks through how each and every element of Claim 13 is met in Sicily's product. *Id.* at 17-20. The accused products and the Pocket Hose products "are both expandable and contractible hoses that expand under water pressure and contract once the pressure is released," which matches the claim in the Pocket Hose Patent. *Id.* ¶ 21.

## CONCLUSIONS OF LAW

### I.    Service

To begin, the Court finds that electronic service in this matter is authorized by Article 15 of the Hague Convention. *See* Art. 15, 20 U.S.T. 361. Because Sicily is "located in China, a

signatory to the Hague Convention, Plaintiff must attempt to comply with Convention requirements before seeking alternative service through the Court, unless an exception to the Convention applies." *Footprint Int'l, LLC v. Footprint Asia Ltd.*, No. 24 Civ. 93, 2024 WL 1556347, at *3 (D. Ariz. Apr. 9, 2024). One such exception is cases of "urgency," where the Convention allows courts to permit electronic service in the event of "irreparable harm in the time it would take to serve the defendant under the Convention." *Id.* (collecting cases). And Article 15 applies when, as here, "service through China's central authority would take many months" and the plaintiff alleges it would "face[ ] irreparable threats to its brand, business interests, and reputation without immediate court intervention." *King Spider LLC v. 884886 CH Store*, No. 23 Civ. 3472, 2024 WL 5145837, at *1 (S.D.N.Y. Dec. 17, 2024). Because the Court finds a likelihood of irreparable harm to Telebrands brand, business interests, and reputation in this case, the Court concludes that Article 15 authorizes electronic service on Sicily.[4]

## II.      Injunction Factors

In considering an application for preliminary injunction, the Court must evaluate the plaintiff's showing for "(1) a likelihood of success on the merits," (2) "that [the plaintiff] is likely to suffer irreparable injury in the absence of an injunction," (3) that "the balance of hardships tips in the plaintiff's favor," and (4) "that the public interest would not be disserved by the issuance of [the] injunction." *Telebrands I*, 2025 WL 1591970, at *4 (citing *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)).

---

[4] The Court acknowledges that it previously rejected electronic service in a similar context in *Spin Master, Ltd. v. Aomore-US*, No. 23 CIV. 7099, 2024 WL 3030405 (S.D.N.Y. June 17, 2024). However, no party in that case addressed Article 15 of the Hague Convention, and *King Spider* had not yet been decided at the that the Court ruled in *Spin Master*.

### A.    Likelihood of Success

Likelihood of success on the merits of patent infringement claims requires a showing that the patent is (1) being infringed and (2) would survive any challenge to validity. *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017); *see also Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). The Court concludes that Plaintiff has made an adequate showing on both fronts. *See fuboTV Inc. v. Walt Disney Co.*, 745 F. Supp. 3d 109, 133 (S.D.N.Y. 2024) ("To establish a likelihood of success on the merits, a plaintiff need not show that success is an absolute certainty. It need only make a showing that the probability of . . . prevailing is better than fifty percent.").

As to infringement, Plaintiff demonstrated that each element of Claim 13 of the patent is met by Sicily's garden hose product. Sicily disputes only one element, arguing that the "catches on" term is not met by Sicily's garden hose products. Opp. at 8-9. Based on the factual findings above, the Court disagrees.

The phrase at issue recites: "an inner surface of the outer tube catches on an outside surface of the elastic inner tube helping the outer tube to contract the inner tube." Iyer Decl. Ex. A at 16-17. Reviewing the images and listing descriptions of Sicily's products, the Court, for purposes of this stage of the litigation, concludes that Plaintiff has met its burden of demonstrating that Sicily's products meet the "catches on" element of Claim 13. Telebrands' patented hoses work through the physical interaction of an inner and outer lining. As explained by counsel:

> There is an inner elastic tube surrounded by an outer fabric cover, and they are not connected to each other between the hose couplers on either end. The outer fabric cover is longer than the elastic tube when it is in the relaxed state, and in that state, the fabric cover is bunched up around the elastic inner tube. When pressurized water is introduced into the hose, the inner elastic tube expands both lengthwise and widthwise, just as a balloon would, to the extent of the fabric cover, causing the fabric cover to straighten out. When the pressurized water is removed from the hose, the inner tube contracts and the frictional contact between the inner elastic tube and the outer fabric cover creates forces between them so that they pull each

8

other and contract together and the outer fabric cover again bunches up over the inner elastic tube.

Tr. 10:9-22.  It is this mechanism that is implicated in Claim 13 of Plaintiff's patent.

The Court concludes that Plaintiff has adequately established, for purpose of this stage of the litigation, that Sicily's products work by the same mechanism.  As demonstrated in the claims charts and Amazon listing description, Sicily's products contain the same inner and outer linings. *See* Turrito Decl. Ex. B 10-16.  The outer lining "catches on" to the inner elastic, allowing the hose to expand and contract.  *Id.*  Because no other aspects of the Claim are disputed, the Court concludes that Telebrands has established a likelihood of infringement.

The Court also concludes that Sicily has failed to demonstrate patent invalidity.  "In terms of the second prong of the infringement test, a patent is statutorily presumed to be prima facie valid.  The burden is thus on the accused infringer to challenge the patent's validity."  *Telebrands I*, 2025 WL 1591970, at *5 (citing 35 U.S.C. § 282(a) and *Lear Siegler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 885 (Fed. Cir. 1984)).  Sicily again challenges the catches on term, this time as invalid for indefiniteness and lack of written description.  The Court disagrees.  As explained above, the "catches on" mechanism is adequately described and taught in the asserted patent.  And the court's decision granting a preliminary injunction in *Telebrands I* was premised on a conclusion that the patent is valid (and thus implicitly rejects Sicily's argument here).

Accordingly, Sicily has established a likelihood of success on the merits of their patent infringement claim.

### B.    Irreparable Harm

"[T]o satisfy the irreparable harm factor in a patent infringement suit, a patentee must establish both of the following requirements: 1) that absent an injunction, it will suffer irreparable

harm, and 2) that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012).

Based on the showing of likely infringement, the Court concludes that irreparable harm is present and is clearly linked to Sicily's infringement. Sicily's products directly compete with those of Telebrands and are offered at a significantly lower price. The Federal Circuit has clearly articulated that "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). "Direct competition in the same market" is enough to "suggest[] strongly the potential for irreparable harm without enforcement of the right to exclude." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012). Accordingly, the Court finds that Telebrands has established irreparable harm.

## C.      Balance of the Equities and Public Interest

"In determining whether the balance of the equities tips in the plaintiff's favor and whether granting the preliminary injunction would be in the public interest, the Court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief, as well as the public consequences in employing the extraordinary remedy of injunction." *Bionpharma Inc. v. CoreRx, Inc.*, 582 F. Supp. 3d 167, 178 (S.D.N.Y. 2022). As another judge of this District concluded in *Telebrands I*,

> Absent an injunction, Plaintiff will continue to suffer reputational harm and impact to its market share, as outlined above. Further, "the public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions." *Apple Inc. v. Samsung Electrs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015). The benefit to the public in protecting patent rights stems from "not only [ ] the Patent Act's statutory right to exclude, which derives from the Constitution, but also [ ] the importance of the patent system in encouraging innovation." *Id.* Here, the public interest would be best served by protecting patent rights and entering the injunction to prevent Defendants from manufacturing, promoting, and selling products that infringe Plaintiff's Pocket Hose Patent.

*Telebrands I*, 2025 WL 1591970, at *7.

Plaintiff has adequately shown that it is likely to suffer irreparable harm as a result of Sicily's infringement. The public interest undoubtedly favors enforcement of Plaintiff's valid patent. The Court concludes that the balance of hardships favors Plaintiff and that injunctive relief would not disserve the public interest. Accordingly, the preliminary injunction should be granted.

### D.   Asset Restraint

While the Court concludes that Telebrands is entitled to injunctive relief, the Court finds that Telebrands has failed to meet its burden for an order of attachment with respect to Sicily's assets. The Court agrees that Rule 65 cannot serve as a basis for the Court's authority to order an asset restraint in this case. *See Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 330–31 (1999). Accordingly, the Court analyzes only Plaintiff's attempt to obtain an Order of Attachment under Rule 64.

Attachment is available in federal court "under the law of the state where the court is located." Fed. R. Civ. P. 64. Under Article 62 of the New York Civil Practice Law and Rules, a plaintiff seeking attachment must establish one of five statutory bases for attachment, among them that "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." N.Y. C.P.L.R. 6201(1). In addition to one of those grounds, the plaintiff must show that (1) "there is a cause of action," (2) "it is probable that the plaintiff will succeed on the merits," and (3) "the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." N.Y. C.P.L.R. 6212(a). A Plaintiff must further demonstrate "an identifiable risk that the defendant will not be able to satisfy the judgment." *VisionChina Media Inc. v. S'holder Representative Servs., LLC*, 967 N.Y.S.2d 338, 345-46 (App. Div. 2013). "The risk should be real" and may include "a defendant's financial position,"

"past and present conduct," "history of paying creditors," or a "stated or indicated intent to dispose of assets." *Id*. at 346.

The Court concludes that, on the current record, Plaintiff is not entitled to an order of attachment against Sicily's assets. While Sicily is a foreign corporation, Telebrands is likely to succeed on the merits, and there are no apparent counterclaims, Telebrands has not provided specific allegations as to Sicily's likely inability to pay any judgment in this case. While Telebrands did provide significant evidence of flight and avoidance of judgments in similar infringement matters by similar sellers, *see, e.g.*, Turrito Decl. ¶¶ 10-12, none of these allegations pertain to Sicily specifically, and Plaintiff has not submitted any evidence indicating that Sicily is similarly situated to those sellers, other than that they are foreign-based. Given that Sicily appeared before the Court and represented that it is willing to engage in further proceedings, the Court concludes that an order of attachment would be improper at this time. Accordingly, the sought order of attachment is **DENIED WITHOUT PREJUDICE**, and the Court will not at this time restrain financial institutions or websites from allowing the free flow of Sicily's assets.

**CONCLUSION**

To summarize, the Court concludes that Telebrands has successfully demonstrated that it is likely to succeed on its patent infringement claim and that the equitable factors favor preliminary injunctive relief.  However, the Court also concludes that Telebrands has not made the requisite showing for an order of attachment on Sicily's asserts at this time.  Thus, Telebrands' motion for preliminary injunctive relief is **GRANTED IN PART** and **DENIED IN PART**.  The specific terms of injunctive relief have issued by separate Order.

SO ORDERED.

Dated:  November 26, 2025

New York, New York

DALE E. HO
United States District Judge